SHAWN N. ANDERSON
United States Attorney
LAURA C. SAMBATARO
Assistant U.S. Attorney
Sirena Plaza, Suite 500
108 Hernan Cortez Avenue
Hagåtña, Guam 96910
PHONE: (671) 472-7332
FAX: (671) 472-7215

Attorneys for the United States of America

IN THE UNITED STATES DISTRICT COURT

FOR THE TERRITORY OF GUAM

UNITED STATES OF AMERICA,

Plaintiff,

vs.

BRIAN SANCHEZ CHAN,

Defendant.

CRIMINAL CASE NO. 19-00040

**UNITED STATES' TRIAL BRIEF**

**Trial: February 4, 2020 at 10:00 a.m.**
**Judge: Frances M. Tydingco-Gatewood**
**Chief Judge**

## TABLE OF CONTENTS

**I. INTRODUCTION** ..... 1

**II. CASE POSTURE** ..... 1

**III. PRETRIAL MOTIONS** ..... 1

**IV. FACTS THE GOVERNMENT INTENDS TO PROVE AT TRIAL** ..... 1

**V. CHARGE AND RELATED ISSUES** ..... 3

A. Possession of Methamphetamine Hydrochloride with Intent to Distribute ..... 3

B. Forfeiture ..... 4

**VI. ANTICIPATED EVIDENCE** ..... 5

A. Task Force Officer (TFO) Raymond Renguul ..... 5

B. TFO David Elliott ..... 6

C. TFO Jeremiah Cruz ..... 6

D. TFO Henry James ..... 6

E. TFO Jeremiah DeChavez ..... 6

F. TFO Jan Dizon ..... 6

G. Special Agent (SA) Jeffrey Knight ..... 7

H. Senior Forensic Chemist Alexandra Ambriz ..... 7

**VII. EVIDENTIARY AND OTHER TRIAL ISSUES** ..... 7

A. Statements ..... 7

B. Admissibility of Video and Audio Recordings ..... 8

C. Photographs ..... 8

D. Duplicates ..... 9

E. Chain of Custody ..... 9

F. Expert Witnesses ..... 9

G. Statements of Non-Testifying Agents ..... 10

H. Prima Facie Threshold for Authentication ..... 10

I. Explanation of Investigation ..... 11

**VIII. CONCLUSION** ..... 11

## TABLE OF AUTHORITIES

**Cases**

*Apprendi v. New Jersey*, 120 S. Ct. 2348 (2000) .......... 4

*Daubert v. Merrell Dow Pharm, Inc.*, 509 U.S. 579 (1993) .......... 10

*Gomez*, 908 F.2d 497 (9th Cir. 1990) .......... 4

*Libretti v. United States*, 516 U.S. 29 (1995) .......... 4

*People of the Territory of Guam v. Ojeda*, 758 F.2d 403 (9th Cir. 1985) .......... 9

*United States v. Barela*, 973 F.2d 852 (10th Cir. 1992) .......... 11

*United States v. Black*, 767 F.2d 1334 (9th Cir. 1985) .......... 11

*United States v. Brannon*, 616 F.2d 413 (9th Cir. 1980) .......... 8

*United States v. Chang An-Lo*, 851 F.2d 547 (2d Cir. 1988) .......... 9

*United States v. Cromer*, 389 F.3d 662 (6th Cir. 2004) .......... 11

*United States v. Dare*, 425 F.3d 634 (9th Cir. 2005) .......... 5

*United States v. Delgado*, 357 F.3d 1061 (9th Cir. 2004) .......... 3

*United States v. Eppolito*, 646 F. Supp. 2d 1239 (D. Nev. 2009) .......... 8

*United States v. Fernandez*, 839 F.2d 639 (9th Cir. 1988) .......... 7

*United States v. Gadson*, 763 F.3d 1189 (9th Cir. 2014) .......... 8

*United States v. Garmany*, 762 F.2d 929 (11th Cir. 1985) .......... 9

*United States v. Georgalis*, 631 F.2d 1199 (5th Cir. 1980) .......... 9

*United States v. Gil*, 58 F.3d 1414 (9th Cir. 1995) .......... 10

*United States v. Hankey*,
203 F.3d 1160 (9th Cir. 2000) ........ 10
*United States v. Harrington*,
923 F.2d 1371 (9th Cir. 1991) ........ 9
*United States v. Innie*,
7 F.3d 840 (9th Cir. 1993) ........ 4
*United States v. Lowe*,
767 F.2d 1052 (4th Cir. 1985) ........ 11
*United States v. Martin*,
897 F.2d 1368 (6th Cir. 1990) ........ 11
*United States v. Myers*,
21 F.3d 826 (8th Cir. 1994) ........ 5
*United States v. Ocampo*,
937 F.2d 485 (9th Cir. 1991) ........ 4
*United States v. Ortega*,
203 F.3d 675 (9th Cir. 2000) ........ 7
*United States v. Pelullo*,
14 F.3d 881 (3rd Cir. 1994) ........ 4
*United States v. Smith*,
966 F.2d 1045 (6th Cir. 1992) ........ 5
*United States v. Solorio*,
669 F.3d 943 (9th Cir. 2012) ........ 9, 10
*United States v. Stewart*,
420 F.3d 1007 (9th Cir. 2005) ........ 9
*United States v. Tenerelli*,
614 F.3d 764 (8th Cir. 2010) ........ 11
*United States v. Voigt*,
89 F.3d 1050 (3rd Cir. 1996) ........ 5

**Statutes**

21 U.S.C. § 802(11) ........ 3
Title 18 United States Code Section 2 ........ 3
United States Code Sections 841(a)(1) ........ 3

**Rules**

Fed. R. Crim. P. 32.2(b)(2) ........ 5
Fed. R. Crim. P. 32.2(b)(4) ........ 4
Fed. R. Crim. P 32.2(b) ........ 4, 5
Fed. R. Evid. 801(d)(2)(A) ........ 7
Fed. R. Evid. 901(a) ........ 9

Fed. R. Evid. 1003 .......... 9
Fed.R.Evid. 901 .......... 11

**Other Authorities**

Criminal Jury Instructions No. 9.15 .......... 3

UNITED STATES' TRIAL BRIEF - v

## I. INTRODUCTION

The United States submits this brief in compliance with the Court's Order entered on December 13, 2019. (ECF No. 36). This case is set for jury trial on February 4, 2019, at 10:00 a.m. The Government's trial brief sets forth a summary of the basic facts the Government intends to prove at trial, and addresses legal and evidentiary issues the Government anticipates arising at trial.

## II. CASE POSTURE

The grand jury returned a True Bill[1] on October 9, 2019 charging the defendant, BRIAN SANCHEZ CHAN (Defendant), with the offense of possession of five or more grams of methamphetamine hydrochloride with intent to distribute, and notices of forfeiture under Title 21, United States Code, Section 853. On December 5, 2019, the grand jury returned a True Bill on a superseding indictment charging the defendant with the offense of possession of fifty or more grams of methamphetamine hydrochloride with intent to distribute. (ECF No. 30).

## III. PRETRIAL MOTIONS

No pretrial motions have been filed in this case.

## IV. FACTS THE GOVERNMENT INTENDS TO PROVE AT TRIAL

On September 16, 2019, Task Force Officer (TFO) Ray Renguul with the Drug Enforcement Administration (DEA) was acting in an undercover capacity to purchase methamphetamine from a suspected narcotics dealer. TFO Renguul arranged to purchase five (5) ounces of methamphetamine for $27,000.00 from an individual known as "B." "B" was later identified to be the Defendant. The Defendant agreed to the sale, but said that he would bring a friend along. Renguul told the Defendant that the deal would take place in the Hilton Hotel parking lot in

[1] ECF No. 21.

Tumon, Guam. At first, the Defendant stated that he was uncomfortable and wanted to meet somewhere else, but later agreed to the meeting location. The Defendant then called Renguul, whom the Defendant believed to be a narcotics purchaser, and informed Renguul that the Defendant was only going to bring two and a half ounces of methamphetamine to the Hilton. The Defendant stated that once he (the Defendant) received the payment for the drugs, the Defendant would send his friend to get the other two and a half ounces.

Renguul went to the agreed-upon meeting place in the parking lot of the Hilton Hotel. Investigators from the DEA and the Guam Police Department (GPD) conducted surveillance of the location. At approximately 4:10 p.m., Renguul received a phone call from the Defendant. The Defendant stated that he was in a silver colored Infiniti with red infinity symbols. Investigators conducting surveillance observed a silver Infiniti enter the first level of the parking garage at the Hilton. Renguul then received a call from the Defendant. The Defendant asked Renguul to meet in the parking garage. Renguul refused and the Defendant then stated that he would walk over towards Renguul. Investigators observed the Defendant approaching Renguul. The Defendant and Renguul engaged in conversation, and Renguul gave the Defendant a roll of fake money intended to be the purchase money for the methamphetamine. The Defendant then reached into his pocket and removed a clear, vacuum sealed bag containing suspected methamphetamine and handed it to Renguul. Renguul then gave a predetermined arrest signal to indicate to surveillance units that the transaction had been completed. Renguul then began walking away from the Defendant. Investigators conducting surveillance then arrested the Defendant. The fake money roll was recovered from the Defendant's pants pocket.

The suspected methamphetamine received from the Defendant was field-tested by Renguul, which yielded a presumptive positive result for the presence of methamphetamine. Later

laboratory testing revealed that the substance was 55.6 net grams of d-methamphetamine hydrochloride with a 97% purity level.

Chan was interviewed by investigators after being advised of, and waiving his *Miranda* Rights.

## V. <u>CHARGE AND RELATED ISSUES</u>

The defendant is charged with one count of possession of methamphetamine hydrochloride with intent to distribute.

### A. Possession of Methamphetamine Hydrochloride with Intent to Distribute

Possession of Methamphetamine Hydrochloride with Intent to Distribute is a violation of Title 21, United States Code Sections 841(a)(1) and 841(b)(1)(A)(viii) and Title 18 United States Code Section 2. The elements of the offense are:

> <u>First</u>: The defendant knowingly possessed methamphetamine hydrochloride; and
>
> <u>Second</u>: The defendant possessed it with the intent to distribute it to another person.

Ninth Circuit Manual of Model Criminal Jury Instructions No. 9.15. Distribution is defined in 21 U.S.C. § 802(11) as the delivery, other than by administering or dispensing (terms involving the legitimate transfer of controlled substances for medical or other legitimate purposes) of a controlled substance.

To "possess with the intent to distribute" means to possess with intent to deliver or transfer possession of a controlled substance to another person, with or without any financial interest in the transaction. *United States v. Delgado*, 357 F.3d 1061, 1065 (9th Cir. 2004); and *United States v. Ocampo,* 937 F.2d 485, 488 (9th Cir. 1991). An intent to distribute may be inferred from the attendant facts and circumstances, including the quantity of drugs possessed.

*Ocampo,* 937 F.2d at 488 ("Possession of a large quantity of cocaine alone may be sufficient to infer both knowledge and intent"); *United States v. Innie*, 7 F.3d 840, 844 (9th Cir. 1993), *cert. denied*, 511 U.S. 1042 (1994) ("A jury may infer the intent to distribute a controlled substance from quantity alone"). Expert testimony may also be offered to show intent to distribute. *United States v. Gomez*, 908 F.2d 497, 502 (9th Cir. 1990).

**B. Forfeiture**

The superseding indictment contains a Notice of Forfeiture pursuant to Title 21, United States Code, Section 853, giving the defendant notice of the Government's intent to seek forfeiture of various properties constituting or derived from, proceeds obtained as a result of the alleged violations or otherwise used or intended to be used to commit or facilitate the commission of the violations. Entry of an order of forfeiture in a criminal case is considered part of sentencing. *Libretti v. United States*, 516 U.S. 29, 39 (1995). Nevertheless, the factual determination as to whether any property was involved or derived from an offense is a matter submitted to the jury. *United States v. Pelullo*, 14 F.3d 881, 904 (3rd Cir. 1994).[2]

The only issue for the jury is whether the Government "has established the requisite nexus between the property and the offense." Fed. R. Crim. P. 32.2(b)(4). The jury itself does not order forfeiture; nor does it consider third-party claims. Fed. R. Crim. P. 32.2(b), (c). In this regard, the Government is submitting proposed jury instructions and a special verdict form. The jury's special verdict will serve as the basis for this Court to enter a preliminary order of

[2] Fed. R. Crim. P 32.2(b), which became effective December, 2000, provides that this factual determination shall be made by the court unless a party requests that the jury determine whether the government has established the requisite nexus between the property and the offense. In an abundance of caution, in light of the Supreme Court's decision in *Apprendi v. New Jersey*, 120 S. Ct. 2348 (2000), the government requests that the Court submit the forfeiture issue to the jury unless the defendants waive any right that they might have to a jury trial on forfeiture. The government does not concede that *Apprendi* should be read to require a jury determination on criminal forfeiture and, indeed, would argue that *Librett*i has held to the contrary. The government nevertheless suggests that, absent defendants' agreement, forfeiture be submitted to the jury until this issue is resolved in this Circuit.

forfeiture. Fed. R. Crim. P. 32.2(b)(2), (3). The final order of forfeiture will follow notice and advertisement of the preliminary order and will address any third-party claims. Fed. R. Crim. P. 32.2(b)(2), (c).

The jury does not consider whether defendants have an interest in the property to be forfeited; nor does the jury determine the extent of the defendants' interest in any property to be forfeited. These matters are considered by the Court in ancillary proceedings, following the jury's special verdict and entry of the preliminary order of forfeiture. Fed. R. Crim. P. 32.2(b), (c); Advisory Committee Note to Subsection (b). As a sentencing issue, the burden of proof is by a preponderance of the evidence. *See United States v. Dare*, 425 F.3d 634, 642 (9th Cir. 2005) ("[T]he preponderance of the evidence standard is the appropriate standard for factual findings used for sentencing.); *United States v. Myers*, 21 F.3d 826 (8th Cir. 1994) (preponderance standard applies because forfeiture is part of sentence in money laundering cases); *United States v. Voigt*, 89 F.3d 1050 (3rd Cir. 1996) (following *Myers*); *United States v. Smith*, 966 F.2d 1045, 1050-53 (6th Cir. 1992) (same for drug cases). Accordingly, the Government requests that the Court instruct the jury on preponderance of the evidence standard if and when the issue of forfeiture is submitted to them for decision. The Government will submit pertinent instructions on this issue prior to the forfeiture stage of this proceeding.

## VI. ANTICIPATED EVIDENCE

What follows is a brief summary of the testimony of the witnesses the government intends to call at trial. This list is not exhaustive.

### A. Task Force Officer (TFO) Raymond Renguul

TFO Renguul is assigned to the DEA office in Saipan. TFO Renguul will testify about his involvement in this case as an undercover officer posing as a Palauan narcotics dealer. TFO

Renguul will testify about his conversations with the Defendant, as well as authenticate recordings and text messages, and testify to the controlled purchase that took place on September 16, 2019 with the Defendant.

**B. TFO David Elliott**

TFO Elliott is assigned to the DEA Guam Resident Office (GRO). TFO Elliott will testify as to his role as the lead case agent in this investigation. TFO Elliott will testify to working with TFO Renguul to arrange the purchase of five grams of methamphetamine from the Defendant and participating in the controlled purchase on September 16, 2019.

**C. TFO Jeremiah Cruz**

TFO Jeremiah Cruz will testify to participating in the September 16, 2019 controlled purchase of methamphetamine. TFO Cruz will testify to handling some of the evidence in this case.

**D. TFO Henry James**

TFO Henry James will testify to participating in the controlled purchase of methamphetamine and the Defendant's arrest. TFO James will testify to seizing evidence from the Defendant pursuant to his arrest and to securing the evidence to the Non-Drug Evidence Custodian.

**E. TFO Jeremiah DeChavez**

TFO Jeremiah DeChavez will testify to his participation in the controlled purchase and the Defendant's arrest and interview.

**F. TFO Jan Dizon**

TFO Jan Dizon will testify to participating in the September 16, 2019 controlled purchase. TFO Dizon will testify to putting together the fake money roll used in the transaction

and to participating in the arrest of the Defendant.

**G. Special Agent (SA) Jeffrey Knight**

DEA SA Jeffrey Knight will testify to his involvement in the investigation of the Defendant, including processing the digital recordings from the undercover controlled purchase from the Defendant and participating in the interview of the Defendant.

**H. Senior Forensic Chemist Alexandra Ambriz**

Alexandra Ambriz is a senior forensic chemist at the DEA Southwest Laboratory. She analyzed the controlled substances seized in this case. All substances tested positive for methamphetamine hydrochloride.

## VII. EVIDENTIARY AND OTHER TRIAL ISSUES

**A. Statements**

The Government will offer the Defendant's statements into evidence. Fed. R. Evid. 801(d)(2)(A). Under Rule 801(d)(2)(A), a party-opponent's own statements are admissible against that party-opponent as non-hearsay. Although the Government may offer a statement into evidence against a defendant as an admission, the defendant cannot offer his prior statements on his own behalf for proof of the truth of the matter asserted since these self-serving statements are hearsay if not offered against a party-opponent. *See United States v. Ortega*, 203 F.3d 675, 682 (9th Cir. 2000) (defendant could not introduce non-self-inculpatory statements because they were inadmissible hearsay). Nor can defendants seek to introduce such hearsay statements through cross-examination of other witnesses. *United States v. Fernandez*, 839 F.2d 639, 640 (9th Cir. 1988).

//

//

### B. Admissibility of Video and Audio Recordings

The United States intends offer into evidence during its case in chief multiple recorded video/audio recordings and audio recordings of phones calls and a meeting between TFO Renguul and the Defendant. Generally, as in this case, this issue arises in the context of a defendant being recorded while planning to conduct or conducting criminal transactions with an undercover officer. The defense will often raise the issue that such recordings violate the Confrontation Clause because the undercover officer's side of the conversation is testimonial. The admission of such recordings does not violate the Confrontation Clause because the undercover officer's side of the conversation merely places the defendant's side of the conversation in context. *United States v. Eppolito*, 646 F. Supp. 2d 1239 (D. Nev. 2009).

The second issue is that the government has the burden of making a *prima facie* showing that the recordings are authentic. This can be accomplished through the testimony of a witness with knowledge. *United States v. Gadson*, 763 F.3d 1189 (9th Cir. 2014). TFO Renguul participated in the phone calls and meeting with the Defendant and can lay a foundation for their authenticity.

### C. Photographs

The Government intends to offer photographs into evidence. Under Rule 901 of the Federal Rules of Evidence, a witness familiar with a scene or object may provide a sufficient foundation for admission of a photograph by testifying that it fairly and accurately depicts the scene or the object at the relevant time. *See United States v. Brannon*, 616 F.2d 413, 416 (9th Cir. 1980), *cert. denied sub nom. Cox v. United States*, 447 U.S. 908 (1980). *See also People of the Territory of Guam v. Ojeda*, 758 F.2d 403 (9th Cir. 1985).

//

//

**D. Duplicates**

A duplicate is admissible to the same extent as an original unless (1) a genuine question is raised as to the authenticity of the original, or (2) the circumstances make it unfair to admit the duplicate instead of the original. *See* Fed. R. Evid. 1003. The party opposing admission on Rule 1003 grounds has the burden of producing evidence to trigger one of these exceptions. *See*, *e.g.*, *United States v. Stewart*, 420 F.3d 1007, 1021 n.13 (9th Cir. 2005); *see also United States v. Chang An-Lo*, 851 F.2d 547, 557 (2d Cir. 1988) (burden of challenging admissibility of duplicate rests with the party against whom it is offered); *United States v. Garmany*, 762 F.2d 929, 938 (11th Cir. 1985) (same); *United States v. Georgalis*, 631 F.2d 1199, 1205 (5th Cir. 1980).

**E. Chain of Custody**

The Government's position is that the chain of custody in this case is sufficient to introduce the methamphetamine into evidence. The Ninth Circuit has held that the prosecution may establish chain of custody to lay a proper foundation for admission of physical evidence if it is able to prove that a reasonable juror could find that the evidence is in substantially the same condition as when seized and if there is a reasonable probability the evidence has not been changed in important aspects. Merely raising the possibility of tampering is not enough to render evidence inadmissible. Finally, a defect in the chain of custody goes to the weight not admissibility. *United States v. Solorio*, 669 F.3d 943 (9th Cir. 2012); *United States v. Harrington*, 923 F.2d 1371 (9th Cir. 1991); *See generally* Fed. R. Evid. 901(a).

**F. Expert Witnesses**

Rule 702 of the Federal Rules of Evidence provides that expert opinion is admissible if the witness is sufficiently qualified as an expert by knowledge, skill, experience, training or education; the scientific, technical, or other specialized knowledge will help the trier of fact to

understand the evidence or to determine a fact in issue; the testimony is based on sufficient facts or data; the testimony is the product of reliable principals and methods and the expert has reliably applied the relevant principles.

An expert may testify in the form of an opinion or otherwise if his or her specialized knowledge will assist the trier of fact to understand the evidence or determine a fact in issue. *Daubert v. Merrell Dow Pharm, Inc.*, 509 U.S. 579 (1993). Further admissibility of expert opinion turns on preliminary questions of law determined by the judge, including whether the testimony is relevant and reliable, and whether its probative value is substantially outweighed by risk of confusion of issues or undue consumption of time. *United States v. Hankey*, 203 F.3d 1160 (9th Cir. 2000).

**G. Statements of Non-Testifying Agents**

During trial, agents may testify about other agents' surveillance. Such testimony is admissible under the present-sense impression exception of Rule 803(1) of the Federal Rules of Evidence. *See, e.g., United States v. Gil*, 58 F.3d 1414, 1422 (9th Cir. 1995) (testimony of agents who overheard observations of surveillance officers "easily satisfy the requirements" of Rule 803(1), as "[t]he surveillance officers were providing a description of the events at the same time they were witnessing them, so the testimony was admissible under the present sense impression exception[.]"). This case-law survives *Crawford*. *See United States v. Solorio*, 669 F.3d 943, 952-54 (9th Cir. 2012).

**H. Prima Facie Threshold for Authentication**

When proffered evidence is challenged on grounds of authenticity or identity, the evidence should be admitted once the government makes a prima facie showing of authenticity. *See United States v. Black*, 767 F.2d 1334, 1342 (9th Cir. 1985) ("[Rule 901] requires only that

the court admit evidence if sufficient proof has been introduced so that a reasonable juror could find in favor of authenticity or identification. The credibility or probative force of the evidence offered is, ultimately, an issue for the jury.") (quotation marks and citation omitted). In order to prove authenticity, there must be some evidence sufficient to support a finding that the evidence is what he proponent claims it to be. Fed.R.Evid. 901.

**I. Explanation of Investigation**

An out-of-court statement is not hearsay when offered not for the truth but to explain how an investigation unfolded. *See United States v. Tenerelli*, 614 F.3d 764, 772 (8th Cir. 2010); *United States v. Cromer*, 389 F.3d 662, 676 (6th Cir. 2004); *United States v. Barela*, 973 F.2d 852, 855 (10th Cir. 1992); *United States v. Martin*, 897 F.2d 1368, 1371-72 (6th Cir. 1990); *United States v. Lowe*, 767 F.2d 1052, 1063-64 (4th Cir. 1985).

## VIII. CONCLUSION

This has been an outline of the case and a discussion of possible issues at trial. Since issues not covered here might come up at trial, the United States would respectfully seek leave to submit further briefs as necessary to assist the Court.

Respectfully submitted this 3rd day of January, 2020.

SHAWN N. ANDERSON
United States Attorney
Districts of Guam and the NMI

By: */s/ Laura C. Sambataro*
LAURA C. SAMBATARO
Assistant U.S. Attorney